# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND
## (Northern Division)

| | |
|---|---|
| **ANNE ARUNDEL COUNTY, MARYLAND**    * | |
| **A Body Corporate and Politic** | |
| **44 Calvert Street**    * | |
| **Annapolis, MD  21401,** | |
|    * | |
|          **Plaintiff,** | |
| **v.**    * | |
| | |
| **XEROX STATE & LOCAL SOLUTIONS,**    * | |
| **INC.** | |
| **(Formerly and Also Known as ACS State &**    * | |
| **Local Solutions, Inc.)** | |
| **8260 Willow Oaks Corporate Drive**    * | |
| **6th Floor** | |
| **Fairfax, VA  22031**    * | |
| | |
| **SERVE ON:**    * | **Civil Action No. 1:16-cv-00563-JFM** |
| | |
|   **CSC-Lawyers Incorporating Service**    * | |
|   **Company** | |
|   **Resident Agent**    * | |
|   **7 St. Paul Street, Suite 820** | |
|   **Baltimore, MD 21202,**    * | |
| | |
|          **Defendant.**    * | |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## AMENDED COMPLAINT

Plaintiff, Anne Arundel County, Maryland (collectively "Plaintiff" or "County"), by and through its attorneys, Supervising Attorney Andrew Murray and Assistant County Attorney Kemp Hammond, hereby sues Defendant, Xerox State & Local Solutions, Inc., f/k/a and a/k/a ACS State & Local Solutions, Inc. (collectively "Defendant" or "Xerox") for money damages and injunctive relief. In support, Plaintiff states as follows:

{00179429.DOC; 1}

## INTRODUCTION

1.      The County's Fire Department provides Emergency Medical Services, ambulance transportation, ambulance services, and related items and services ("EMS Services") to the County's residents and visitors.  The billing and collecting process for the County's EMS Services requires industry-specific expertise, the devotion of substantial resources, and the exercise of significant care and attention to ensure the County collects all monies owed to it.

2.      Xerox and its predecessor, ACS State & Local Solutions ("ACS"),[1] represented to the County that Xerox had the necessary ability and expertise, and Xerox represented that it would devote the substantial resources and attention necessary to perform billing and collections on behalf of the County.  Based on Xerox's representations, the County placed its trust in Xerox and contracted with Xerox to provide EMS billing and collections services in exchange for a fee based on a percentage of the amount Xerox collected on behalf of the County.

3.      Xerox, however, did not satisfy its contractual and other obligations to the County by, among other material breaches, not submitting claims to health benefits providers, failing to collect money due to the County from health benefits providers, and having undertrained and ill-equipped staff.

4.      Xerox did not have the expertise it represented it had.  Xerox did not intend to devote the resources necessary to handle the County's EMS billing and collection needs in accordance with the parties' contract.  Xerox breached its contractual and other obligations to the County in many ways, including by failing to devote sufficient resources to adhere to the obligations under the Billing and Collections Contract, failing to collect as much as a reasonably diligent and contract-compliant

---

[1] ACS changed its name to Xerox, which substituted in place of ACS on the Medical Transport and Billing Collection Services Contract with the County effective April 2, 2012.  (Ex. 2 – Amendment to Agreement (Oct. 18, 2012).  ACS' name change to Xerox came after Xerox acquired ACS.  As a result, any references in this Complaint to Xerox include ACS and Xerox.
{00179429.DOC; 1}

billing and collections vendor under similar circumstances would have collected, and by failing to adhere to the prevailing professional standards with respect to the scope, quality, due diligence, and care of its EMS billing and collections services.

5.     Xerox compounded its breaches by concealing its breaches and related misconduct from the County.  Xerox refused, and continues to refuse, to provide or was and is otherwise incapable of providing the County with fully auditable billing, collection, and accounts receivable systems that Xerox contractually was required to maintain and make available to the County.  Xerox took and continues to take advantage of the lack of transparency it created to conceal the existence and full extent of its breaches of the Collections Contract.

6.     Xerox's breaches, inadequate collections, and other wrongful conduct caused the County to lose millions of dollars, exposed and continue to expose the County to potential liabilities to Medicare, Medicaid, private insurance companies, and individuals for overpayment of improperly billed accounts.

7.     After the Billing and Collection Services Contract was not renewed on March 31, 2014, Xerox caused further damage to the County and hindered the County's billing and collection efforts.  Xerox converted documents and information that belonged to the County and that Xerox was required to maintain and provide in a usable format upon termination of the Contract.  Xerox alternately claimed these materials did not exist, and then refused to turn over the materials to the County.  The County was required to file this lawsuit and seek injunctive relief in order to compel Xerox to provide these materials to the County, which Xerox was expressly and contractually required to maintain.  The County now seeks to hold Xerox financially accountable for the substantial harm Xerox caused the County and its residents.

## PARTIES

8.      The County is a chartered county of the State of Maryland established under Article

XI-A of the State Constitution with powers conferred upon it by, *inter alia*, Titles 9 and 10 of the

Local Government Article of the Annotated Code of Maryland.  Pursuant to Section 103 of the Anne

Arundel County Charter, all legal proceedings on behalf of its constituent offices and departments,

including the Office of Finance, are brought by the County in its corporate name, "Anne Arundel

County, Maryland."

9.      Pursuant to MD. CODE ANN., LOC. GOV. § 9-201(2), the County, as a charter county,

has the authority to sue.

10.      Per Anne Arundel County Code § 12-1-104, the County is authorized to charge fees

for its ambulance services, including basic life support, advanced life support, and transport to a

hospital.[2]

11.      Xerox is a corporation incorporated in the State of New York, headquartered in

Fairfax, Virginia, and registered to conduct business in the State of Maryland with its Resident Agent

located in the State of Maryland.

## JURISDICTION AND VENUE

12.      Pursuant to MD. CODE ANN., CTS. & JUD. PROC. §§ 6-102 and 6-103(b), jurisdiction is

proper in the Court as Xerox's resident agent is in the State of Maryland and, at all times relevant to

the allegations in this Complaint, Xerox has transacted business in the State of Maryland.

13.      Pursuant to MD. CODE ANN., CTS. & JUD. PROC. § 6-201, venue is proper in this Court

as Xerox has carried on regular business in Anne Arundel County.  Venue is also proper in this Court

---

[2] Before the law changed in October 2014, which took effect in December 2014, and during the Billing and Collection Services Contract, the fee was $500.00.

pursuant to MD. CODE ANN., CTS. & JUD. PROC. § 6-202(3) because Xerox has no principal place of business in the State of Maryland.

## FACTS

Request for Proposal, Xerox's Proposal, and Xerox's Misrepresentations

14.     The County provides EMS Services through the County Fire Department for residents and visitors. Private and governmental health insurance programs, other third parties, and non-County residents who receive such services are billed for the approximately 45,000 EMS transports the County provides annually.[3] The data collection, documentation, coding, billing, and collection process and standards for EMS Services are complex and require specialized expertise.

15.     On or about June 1, 2008, the Anne Arundel County Council amended the County's Code to permit billing for EMS transports.  Subsequently, on or about January 15, 2009, the County issued Request for Proposal No. 09-001R for Medical Transport Billing & Collection Services (the "RFP") and solicited proposals from qualified billing and collection firms to provide such services to the County for the first time.

16.     While many other municipalities implemented an EMS transport billing system, the County had not done so until 2009.

17.     On or about February 18, 2009, Xerox submitted its technical and cost proposal in response to the County's RFP (the "Proposal").[4]

18.     Xerox held itself out to the County and to the public as an expert in EMS billing and collection services.  Xerox represented to the County that it had the necessary expertise to properly

---

[3] County residents who are not insured are not billed.  Non-County residents may be responsible for payment of EMS Services regardless of whether they have insurance.

[4] While ACS submitted the Proposal, as mentioned in Footnote 1, Xerox acquired ACS and on April 2, 2012, ACS changed its name to Xerox under the Billing and Collections Contract.

perform EMS billing and collection services for the County, and to do so accurately, professionally, and in compliance with applicable law and standards.  In its Proposal, Xerox represented to the County that it had the required expertise to provide the requested services that will meet and/or exceed the requirements outlined in the RFP.  Xerox represented to the County that it would commit substantial resources to handle the County's EMS billing and collections.

19.     In its Proposal, Xerox also represented to the County that it had "[s]ubject matter experts who are committed to delivering the highest level of customer service while maintaining regulatory compliance."  Xerox represented it had a "[f]irm commitment to provide a quality technology solution that meets or exceeds the County's system goals."

20.     On February 18, 2009, Xerox represented to the County that in fiscal year 2007, it processed nearly 425,000 emergency transports and accurately applied and accounted for more than $75 million in EMS payments for its clients.  Xerox represented to the County that its third-party collection rate for its clients was nearly 95 percent.

21.     Xerox's representations were intended to, and did, deceive actual and potential customers like the County to develop a sense of trust, confidence, and security in Xerox's EMS Billing Processes.  Xerox's representations confirm that Xerox claimed to know the challenges that the County faced and why the County needed competent outside help with such processes.

22.     Xerox misrepresented and continues to misrepresent the quality and extent of the services it provided to its customers.  In 2012, Xerox made public statements about its healthcare expertise, and represented:

> By applying our deep healthcare expertise and heritage of innovation expertise across virtually every member of the healthcare ecosystem-providers and payers, employers and government agencies, we help you focus on what matters-the real business of improving people's lives through

> better, more accessible and more affordable healthcare-which leads to better
> health and wellness. That's what we mean by the freedom to care.

In 2012, Xerox represented: "Better care, better bottom line. We improve accuracy in billing third-party payers, including Medicaid and Medicare, and decrease the amount of unpaid debt from ambulance transport fees." Contrary to Xerox's representations, Xerox failed to demonstrate or deliver its represented "expertise" in providing the County with EMS billing and collection services.

23.     The County reasonably relied on and reposed trust and confidence in Xerox, and did so for several years. On multiple occasions during the term of the Billing and Collection Services Contract, Xerox repeated to the County these and other material false representations about Xerox's supposed expertise in EMS Billing Processes to the County and did so with the purposes of concealing its ongoing failures to comply with the requirements of the Contract and inducing the County to not terminate the contractual relationship.

24.     Based on Xerox's misrepresentations, the County appointed Xerox as its contractor to perform EMS Billing Processes and to represent the County's interests with health insurance programs, government agencies, auditors, and individuals who received EMS Services. Unfortunately, Xerox exploited and took advantage of the County's trust and comparative lack of knowledge and experience about EMS Billing Processes.

<u>The Medical Transport Billing and Collection Services Contract</u>

25.     Based on Xerox's representations, on April 1, 2009, the County and Xerox entered into a contract, signed under seal, for Xerox to perform EMS billing and collections on the County's behalf. (Ex. 1 – Agreement for Services dated April 1, 2009). On April 1, 2009, the County and Xerox entered into an "Agreement for Services," which incorporated the following attachments: A) the RFP (including Addenda 1 and 2); B) Xerox's Proposal; C) Xerox's Exceptions and the County's responses; D) Xerox's Additions emailed February 19, 2009, Xerox's Response to Request for

Clarifications emailed February 26, 2009 through March 5, 2009, Xerox's Answers to questions emailed March 18, 2009, and its Questions/Discussion and Xerox's Baltimore EMT Tablet Manual Power Point emailed March 12, 2009;  E) Summaries of Conference calls from March 12, 19, 20, 23, and 25 in 2009; F) Xerox's Best and Final Offer Number 4 dated March 27, 2009; and G) the Anne Arundel County Project Plan emailed March 24, 2009.  The "Agreement for Services," all of the attachments thereto referenced above, and the amendments thereto are collectively referred to as the "Billing and Collection Services Contract."[5]

26.    The term of the Billing and Collection Services Contract was five (5) years commencing on April 1, 2009, with the option to renew for up to two (2) one-year periods at the sole discretion of the County.  (Ex. 1, ¶ 2).

27.    The Billing and Collection Services Contract imposed numerous specific obligations on Xerox.  Xerox made certain representations and warranties and agreed to certain performance requirements, which were critical to the County.

28.    Among many other requirements, the Billing and Collection Services Contract required Xerox to provide the labor, material, and supervision necessary to provide EMS billing and collection services for the County.  Section 2.3.1 of the RFP in the Billing and Collection Contract states: "[t]he Successful Offeror [Xerox] shall furnish necessary materials, equipment, tools, skill, engineering, technical support, and labor necessary to fully complete in a workmanlike and timely manner the requirements of this RFP and any resulting agreement according to the Specifications, and any resulting Contract, including any Exhibits and Appendices."

---

[5] Due to the voluminous number of pages included in the Billing and Collection Services Contract, the initial Agreement for Services is in Exhibit 1, not the entire Billing and Collection Services Contract.

29.     Section 2.4.1 of the RFP required Xerox to ". . . furnish an all inclusive system that includes equipment, product, materials, supervision and labor required to provide a comprehensive, automated medical transport billing and collection system."

30.     Section 3.4.1 of the RFP specified the following Billing and Collection Services for Xerox to provide: "EDI Claims Processing, including associated follow-up collection efforts, [o]btaining insurance information, ACS [Xerox] Lock Box payment processing, including electronic postings, [b]ad Debt Collections, [e]lectronic File Interchanges with local hospitals, [i]nsurance eligibility processing, and [c]hange of address processing."

31.     Regarding reporting, Section 2.3.11 mandated that Xerox ". . . provide monthly status reports (using Microsoft Word); provide project schedule updates (using Microsoft Project) and transmit them to the County or the County's designee in both hardcopy and electronic format; and provide other reports as reasonably requested by the County."

32.     Under the Billing and Collection Services Contract, Xerox would receive a fee for its services calculated as a percentage of the amounts collected for the County's EMS Services. Xerox's fee was 6.68% of the amounts collected for the County's EMS Services.

33.     As stated in Section 2.4.1.2.1 of the RFP, the County charged a fee of $500.00 for its services for each transport by its Fire Department.  This basic flat fee structure should have made it relatively simple for Xerox to bill and collect payment for the County.[6]

Xerox's Breaches of the Billing and Collection Services Contract

34.     On July 22, 2013, a consulting firm retained by the County performed an audit of Xerox's billing methodologies and compliance activities under the Billing and Collection Services

---

[6] As referenced in Footnote 2, new billing rates became effective in December 2014: $500.00 for Basic Life Support ("BLS"), $700.00 for Advanced Life Support ("ALS") 1, $750.00 for ALS 2, and mileage charges.

Contract.[7] The audit consisted of interviews of Xerox's staff, examination of available records, and various claims, including Medicare and Medicaid claims.

35.    The audit determined many performance deficiencies by Xerox in its billing and collection efforts resulting in material breaches of the Billing and Collection Services Contract.

36.    The audit showed that Xerox either did not bill or improperly processed a substantial percentage of claims and that the claims were defective for several reasons.  Thousands of claims with dates of service during the last half of 2012 were not processed in a timely fashion.

37.    The audit revealed many coding problems, including Xerox incorrectly or inappropriately coding numerous claims.

38.    The audit resulted in the discovery of a steady decline in collections by Xerox during 2012 and into 2013.  The estimated percentage of Xerox's collections from mid-2012 into early 2013 was no higher than 30% and consistently dropped into 2013.  These collection results are exceptionally low and well below the national average.  They were attributable to several factors including, but not limited to, Xerox's failure to perform comprehensive follow-up activities on outstanding accounts receivable for the County.

39.    Xerox's failure to bill certain claims, improperly processing certain claims, improperly coding certain claims, and the deficient collection results are material breaches of the Billing and Collection Services Contract.

40.    Xerox violated many contractual provisions, which include, but are not limited to, Sections 2.3.1 and 2.4.1 cited above as well as Sections 2.4.2.3,[8] 2.4.2.6, 2.4.2.12, and Addendum 1 to the RFP, which required Xerox to capture bad debt.

---

[7] Section 5.5.2 of the Contract provides that "[t]he County may audit at any time during the term of the Contract…"

[8] By way of example, Section 2.4.2.3 states: "The Successful Offeror [Xerox] shall be responsible for the billing, collection, and depositing of all monies owed for emergency medical transport services rendered to patients using the

{00179429.DOC; 1}

41.     The audit also revealed that Xerox did not regularly require its billing staff members to attend or participate in continuing education or classes on EMS and ambulance coding methodologies.  The billing staff members were unaware of any formal compliance plan and did not receive any formal compliance training or education.

42.     Xerox's failure to educate its employees on EMS and ambulance coding methodologies as well as compliance is a material breach of multiple provisions in the Billing and Collection Services Contract including, but not limited to, Section 2.3.1 cited above.

43.     The audit showed that Xerox administrative and billing staff members were completely unaware of many critical changes to Medicare billing and coding policies and related regulations.  Also, Xerox representatives were unaware of other critical regulatory changes, such as dispatch and call intake procedures becoming key elements to effective and efficient ambulance claim processing and compliance.

44.     Again, these failures by Xerox constituted a material breach of the Billing and Collection Services Contract.

45.     The audit determined that Xerox did not identify or provide claim-specific answers to mandatory questions related to patient issues, such as necessity, stretcher use, bed-confinement, which are required for each Medicare claim.  This finding showed that Xerox's billing software was improperly programmed with default responses to claim-specific questions.

46.     Xerox's failure to provide mandated claim-specific answers related to patient issues is a material breach of several provisions in the Billing and Collection Services Contract, such as Section 2.4.5.1, which required Xerox to obey all laws and regulations when seeking reimbursement

---

established county fee schedule.  Depositing of monies to the County shall be via electronic methods into the County furnished Bank Accounts (to be supplied to the Successful Offeror [Xerox])."

from individuals, private insurance carriers, and federal health insurance programs such as Medicare and Medicaid.

47.     The numerous deficiencies by Xerox in its performance of EMS billing and collection exhibited its failure to provide all technical and administrative support to perform the billing and collection services, which is a material breach of Section 2.4.1.1 of the Billing and Collection Services Contract.

48.     Sections 2.4.6.7 and 2.4.6.8 of the RFP required Xerox to submit Management Reports to the County on a regular basis, which include, but are not limited to the following information and statistics: reconciliation of the monthly collections and the revenue recorded in the County's financial management system, number of transports, number and percent of billable and non-billable transports, number and percent of forms with insufficient information, deposits made into the County's account along with Xerox's invoice, total revenue and number of accounts collected for the month (net billings), the monthly and cumulative collection rates (in dollars and counts) by category, and uncollected accounts by age in 30-day increments.

Nonrenewal of Billing and Collection Services Contract and Further Breaches by Xerox

49.     As a result of the countless performance failures and deficiencies under the Billing and Collection Services Contract, many of which have yet to be fully uncovered, on November 20, 2013, the County notified Xerox in a letter that the County opted not to renew the Billing and Collection Services Contract with Xerox.  The County notified Xerox that it would cease sending claims to Xerox for collection on and after January 31, 2014.

50.     In the November 20, 2013 letter to Xerox, the County demanded that all information relative to all claims not paid to the County on or before March 31, 2014 be forwarded by Xerox to the County's designated vendor.  The County also demanded Xerox to transfer all information

regarding claims collected by Xerox on behalf of the County on or before March 31, 2014 to the County. The County instructed Xerox to maintain all billing and other records as required by the Billing and Collection Services Contract.

51. Shortly after the County notified Xerox of its decision not to renew the Billing and Collection Services Contract, Xerox dismissed the on-site employee assigned to the County Fire Department Headquarters under the Contract.

52. Xerox's dismissal, however, was a material breach of the provision in Xerox's cost proposal, which is part of the Billing and Collection Services Contract and provides that "an onsite team for the duration of the contract that includes project management, technical and training support."

53. On January 31, 2014, the County sent a letter to Xerox reminding Xerox of its obligation to maintain all records, data and other information related in any way to the agreement.

54. Section 1.7.10 of the RFP, which is part of the Billing and Collection Services Contract, required the following:

> [*a]ll* reports, drawings, and other data prepared in connection with the work contemplated by this RFP shall become the property of the County. The Contractor [Xerox] shall retain all records and documents related to work performed under any Contract awarded pursuant to this RFP for at least three (3) years after final Contract payment by the County, and shall make them available for inspection and audit by authorized representatives of the County at all reasonable times.

(Emphasis added.)

55. Also, Section 5.5 requires Xerox to retain in original form, format, and medium all books, records, and documents from the date of their inception, which includes, but is not limited to, cost or pricing data and Xerox's operations.

56.     The County's consultant, who reviewed Xerox's performance under the Billing and Collection Services Contract, found that no electronic billing records were made available for its review by Xerox.   Xerox's billing records were grossly incomplete and lacked any type of consistency or uniformity.

57.     As a result, Xerox materially breached the contractual obligations including, but not limited to, Sections 1.7.10 and 5.5, by not maintaining all necessary records and providing same to the County.

58.     Further, in May 2015, the County discovered a myriad of envelopes located at the Post Office Box in Baltimore, Maryland, which was, unbeknownst to the County, the Xerox collection box for County ambulance fees.   The County found that the envelopes contained numerous payments for overdue EMS Services and that Xerox had, at an as yet undetermined time, abandoned the Post Office Box.

59.     Pursuant to Section 5.15.1 of the Billing and Collection Services Contract, Xerox:

> . . . shall indemnify, save, and hold harmless the County, its employees, and agents, against any and all claims, damages, liability, and court awards including costs, expenses, and attorney fees incurred as a result of any act or omission by the Successful Offeror or its employees, agents, subcontractors, or assignees pursuant to the terms of any Contract resulting from this RFP.

## COUNT I
## (BREACH OF CONTRACT)

60.     The County incorporates Paragraphs 1 through 59 above as if fully set forth herein.

61.     The Billing and Services Contract between the County and Xerox contains many contractual obligations related to billing and collection for EMS Services that Xerox was required to perform for the County.   These include, but are not limited to, Sections 2.3.1, 2.3.8, 2.4.1, 3.4.1, and 2.3.11.

62.     Xerox breached the Billing and Collection Services Contract in many ways including, but not limited to, the following:

a.     Failing to bill or process claims;

b.     Improperly processing claims;

c.     Incorrectly or inappropriately coding claims;

d.     Failing to collect payments from non-County residents, private insurance carriers, and federal health insurance programs such as Medicare and Medicaid;

e.     Failing to diligently pursue overdue payments owed to the County;

f.     Failing to perform in accordance with prevailing industry practices, including without limitation, systematically inadequate collections on the County's behalf;

g.     Failing to dedicate adequate supervision, systems, services, and properly qualified personnel required to deliver the services required under the Billing and Collection Services Contract;

h.     Having Xerox staff members work on the Billing and Collection Services Contract who were unaware of compliance standards;

i.     Failing to have its staff attend or participate in continuing education or classes for matters such as ambulance coding methodologies;

j.     Having Xerox staff members work on the Billing and Collection Services Contract who were unaware of critical changes to Medicare billing and coding policies related to regulations;

k.     Using insufficient billing software or improperly programming its software that resulted in not providing claim-specific answers to mandatory questions related to patient issues;

l.     Using software that contained defects, which violated Xerox's warranties;

m.     Performing services with defects in workmanship, that did not conform to prevailing professional standards, and that violated Xerox's warranties;

n.     Failing to provide a mechanism to ensure revision of internal rules, regulations and policies to comply with applicable regulatory and legal changes;

o.    Failing to maintain adequate records, both electronic and paper records related to billing, invoicing, and all other related data; and

p.    Failing to provide the County all such required records upon request by the County.

63.    As a proximate and direct result of Xerox's material breaches, the County suffered and will continue to suffer substantial damages including, but not limited to, out-of-pocket costs, lost revenue, lost profits, loss of the benefit of the parties' bargain, and other actual damages, costs associated with securing and utilizing replacement services, costs associated with fees and penalties due to Xerox's breaches of the Billing and Collection Services Contract and other wrongful conduct, attorneys' fees, costs, expenses, and other damages.

WHEREFORE, Plaintiff, Anne Arundel County, Maryland respectfully requests this Honorable Court:

(a) enter judgment against Defendant, Xerox State & Local Solutions, Inc. for damages exceeding $75,000.00 for compensatory damages plus interest, costs, and attorneys' fees;

(b) enter a preliminary injunction against Defendant, Xerox State & Local Solutions, Inc. ordering it to: 1. produce to the County any and all reports and other data Xerox prepared in connection with the work contemplated in the Billing and Collection Services Contract per Section 1.7.10 of the Contract; and 2. produce to the County any and all books, records, and documents in original form, format, or any medium, per Section 5.5, *et seq.* of the Billing and Collection Services Contract;

(c) enter a permanent injunction against Defendant, Xerox State & Local Solutions, Inc. for it to: 1. produce to the County any and all reports and other data Xerox prepared in connection with the work contemplated in the Billing and Collection Services Contract per Section 1.7.10 of the

Contract; and 2. produce to the County any and all books, records, and documents in original form, format, or any medium, per Section 5.5, *et seq.* of the Billing and Collection Services Contract; and

(d) enter an order for such other and further relief as this Court deems just and proper.

## COUNT II
## (FRAUD: INTENTIONAL MISREPRESENTATION)

64.     The County incorporates Paragraphs 1 through 63 above as if fully set forth herein.

65.     Xerox, through its employees and other agents, made false representations of material facts to the County before and during the execution of the Billing and Collection Services Contract including, but not limited to, Xerox's abilities and expertise regarding EMS Services data collection, documentation, coding, and billing.

66.     Xerox misrepresented to the County that it had the necessary expertise to properly perform EMS billing and collection services for the County, and to do so accurately, professionally, and in compliance with applicable law and standards.

67.     In its Proposal, Xerox misrepresented to the County that it had the required expertise to provide the requested services that will meet and/or exceed the requirements outlined in the RFP. Xerox misrepresented to the County that it would commit substantial resources to handle the County's EMS billing and collections.

68.     Also in its Proposal, Xerox misrepresented to the County that it had "[s]ubject matter experts who are committed to delivering the highest level of customer service while maintaining regulatory compliance."  Xerox misrepresented that it had a "[f]irm commitment to provide a quality technology solution that meets or exceeds the County's system goals."

69.     Xerox and its personnel knew that its representations were false or they were reckless with respect to their knowledge of the truth.

70.     Xerox and its personnel intended for the County to act in reliance upon its false representations, which resulted in the County awarding the RFP to Xerox, entering into the Billing and Collection Services Contract with Xerox, and the County not terminating the Contract with Xerox.

71.     The County justifiably and reasonably relied on Xerox's false representations to its detriment.   The County relied upon Xerox representations of its purported expertise in and knowledge of Medicare laws and regulations and its stated ability to remain compliant with Medicare laws and practices.

72.     As the direct and proximate result of Xerox's intentional misrepresentations, the County has suffered and continues to suffer substantial actual damages including, but not limited to, out-of-pocket costs, lost revenue, lost profits, and other actual damages, costs associated with securing and utilizing replacement services, and costs associated with fees and penalties due to Xerox's wrongful conduct.

WHEREFORE, Plaintiff, Anne Arundel County, Maryland respectfully requests this Honorable Court enter judgment against Defendant, Xerox State & Local Solutions, Inc. for damages exceeding $75,000.00 for compensatory damages plus interest, punitive damages, costs, attorneys' fees, and such other and further relief as justice may require.

### COUNT III
### (NEGLIGENT MISREPRESENTATION)

73.     The County incorporates Paragraphs 1 through 72 above as if fully set forth herein.

74.     Xerox owed a duty of care to the County through the RFP process and during the term of the Billing and Collection Services Contract.

75.     Xerox, through its employees and other agents, negligently misrepresented material facts to the County before and during the execution of the Billing and Collection Services Contract including, but not limited to, that Xerox had the necessary expertise to properly perform EMS billing and collection services for the County, and that it would perform those services accurately, professionally, and in compliance with applicable law and standards.

76.     Xerox misrepresented to the County that it had the required expertise to provide the requested services that would meet and/or exceed the requirements outlined in the RFP.  Xerox misrepresented to the County that it would commit substantial resources to handle the County's EMS billing and collections.

77.     Xerox misrepresented to the County that it had "[s]ubject matter experts who are committed to delivering the highest level of customer service while maintaining regulatory compliance."  Xerox misrepresented it had a "[f]irm commitment to provide a quality technology solution that meets or exceeds the County's system goals."

78.     Xerox and its personnel intended for the County to act in reliance upon its misrepresentations, which would result in the County awarding the RFP to Xerox, entering into the Billing and Collection Services Contract with Xerox, and the County not terminating the Contract with Xerox.

79.     Xerox and its personnel knew that the County would rely on its misrepresentations when the County selected Xerox as the contractor for the RFP and entered into the Billing and Collection Services Contract.

80.     The County justifiably and reasonably relied on Xerox's misrepresentations because the County relied on its expertise.

81.     As the direct and proximate result of Xerox's negligent misrepresentations, the County has suffered and continues to suffer substantial actual damages including, but not limited to, out-of-pocket costs, lost revenue, lost profits, and other actual damages, costs associated with securing and utilizing replacement services, and costs associated with fees and penalties due to Xerox's wrongful conduct.

WHEREFORE, Plaintiff, Anne Arundel County, Maryland respectfully requests this Honorable Court enter judgment against Defendant, Xerox State & Local Solutions, Inc. for damages exceeding $75,000.00 for compensatory damages plus interest, punitive damages, costs, attorneys' fees, and such other and further relief as justice may require.

## COUNT IV
## (FRAUD: NONDISCLOSURE OR CONCEALMENT)

82.     The County incorporates Paragraphs 1 through 81 above as if fully set forth herein.

83.     Xerox, through its employees and other agents, intentionally concealed and continues to intentionally conceal material facts from the County that Xerox had and has a duty to disclose.

84.     Xerox, through its employees and other agents, intentionally concealed or failed to disclose to the County certain material facts including information about Xerox's abilities and expertise with respect to data collection, documentation, coding, and billing for EMS Services.

85.     Xerox was aware that the County did not know these facts and the County did not have an equal opportunity to discover the facts through reasonable diligence, which the County exercised.

86.     Xerox intentionally concealed such material facts to induce the County to act differently from how the County would have acted had it known of the concealed material facts.

{00179429.DOC; 1}

87.     Because of Xerox's intentional concealment, the County acted in a different manner from how it would have acted had the County been informed of the true material facts by Xerox. Had the County been informed of the true facts, the County would have either not entered into the Billing and Collection Services Contract with Xerox or terminated the Contract earlier than it did to mitigate any damages.

88.     As the direct and proximate result of Xerox's intentional concealment, the County has suffered and continues to suffer substantial actual damages including, but not limited to, out-of-pocket costs, lost revenue, lost profits, and other actual damages, costs associated with securing and utilizing replacement services, and costs associated with fees and penalties due to Xerox's wrongful conduct.

WHEREFORE, Plaintiff, Anne Arundel County, Maryland respectfully requests this Honorable Court enter judgment against Defendant, Xerox State & Local Solutions, Inc. for damages exceeding $75,000.00 for compensatory damages plus interest, punitive damages, costs, attorneys' fees, and such other and further relief as justice may require.

## COUNT V
### (CONVERSION – COUNTY'S RECORDS AND DATA)

89.     The County incorporates Paragraphs 1 through 88 above as if fully set forth herein.

90.     Section 1.7.10 of the RFP, which is part of the Billing and Collection Services Contract, states the following:

> [a]ll reports, drawings, and other data prepared in connection with the work contemplated by this RFP *shall become the property of the County*. The Contractor [Xerox] shall retain all records and documents related to work performed under any Contract awarded pursuant to this RFP for at least three (3) years after final Contract payment by the County, and shall make them available for inspection and audit by authorized representatives of the County at all reasonable times.

(Emphasis added.)

91.     Also, Section 5.5 required Xerox to retain in original form, format, and medium all books, records, and documents from the date of their inception, which includes, but is not limited to, cost or pricing data and Xerox's operations.

92.     Xerox has seized control of the County's reports and data related to the Billing and Collection Services Contract.  Despite the County's multiple requests to provide all such records to the County, Xerox has not done so.

93.     Xerox's seizure and control of the County's records is intentional and done without the County's permission.

94.     Xerox's actions constitute a conversion of the County's property.

WHEREFORE, Plaintiff, Anne Arundel County, Maryland respectfully requests this Honorable Court enter judgment against Defendant, Xerox State & Local Solutions, Inc. for damages exceeding $75,000.00 for compensatory damages plus interest, punitive damages, costs, attorneys' fees, and such other and further relief as justice may require.

NANCY McCUTCHAN DUDEN
County Attorney

Date: April 21, 2016

*/S/ Andrew J. Murray*

Andrew J. Murray
Federal Bar No. 10511
Supervising County Attorney
amurray@aacounty.org

*/S/ Kemp W. Hammond*

Kemp W. Hammond
Federal Bar No. 29323
Assistant County Attorney
khammond@aacounty.org
Anne Arundel County Office of Law
2660 Riva Road, 4th Floor
Annapolis, Maryland 21401
Tel:  410-222-7888
Fax: 410-222-7835

*Attorneys for Plaintiff, Anne Arundel
County Maryland*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 21st day of April, 2016, a copy of this Amended Complaint was electronically filed with the Clerk of Court using the CM/ECF system, which will send a notification of such filing to all Counsel of Record who have entered an appearance in this matter, including:

Charles O. Monk, II, Esq.
Katrina J. Dennis, Esq.
500 East Pratt Street, 8th Floor
Baltimore, Maryland 21202

*Attorneys for Defendant,
Xerox State & Local Solutions, Inc.*

*/S/ Kemp W. Hammond*

Kemp W. Hammond