## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

ANNE ARUNDEL COUNTY, MARYLAND     \*
                                                \*
                                                \*

          v.                          \*        Civil No. JFM-16-00563
                                                \*

XEROX STATE & LOCAL SOLUTIONS,  \*
INC.                                          \*

                                     \*\*\*\*\*\*

## MEMORANDUM

Plaintiff Anne Arundel County, Maryland ("The County") brings this lawsuit against Xerox State & Local Solutions ("Xerox") seeking money damages and injunctive relief. Anne Arundel asserts a breach of contract claim and various tort claims relating to a contract in which Xerox agreed to provide billing and collections services for the County's Emergency Medical Services, ambulance transportation, and related public amenities. Pending is Defendant's motion to dismiss all claims against them. (ECF No. 16-1). The motion is fully briefed, and no oral argument is necessary. *See* Local Rule 105.6. For the reasons set forth below, the motion to dismiss is granted in part and denied in part.

## BACKGROUND

This dispute arises out of a contract between Anne Arundel and Xerox for the provision of billing and collections services for the County's Emergency Medical Services ("EMS"). (ECF No. 12 ¶ 2). In June of 2008, Anne Arundel amended its County Code to allow the County to charge residents for their use of EMS transports and related services. (*Id.* ¶ 15). Given that Anne Arundel was new to the practice of charging for EMS transports and had yet to implement any sort of standardized billing system, the County in January of 2009 solicited proposals from experienced billing and collections firms to handle these services on its behalf. (*Id.*). In

February 2009, Xerox, through its predecessor, ACS State & Local Solutions, submitted a proposal to the County detailing the technical services it could provide as well as cost estimates. (*Id.* ¶ 17). The Xerox proposal represented to Anne Arundel that Xerox was an expert in billing and collections services for EMS and was prepared to meet or exceed all of the needs outlined by the County in its request for proposals. (*Id.* ¶ 18–19). On April 1, 2009, Anne Arundel and Xerox entered into an "Agreement for Services" contract for Xerox to provide billing and collections services for the County's EMS and to act as a liaison between the County and health insurance providers, government agencies, auditors, and individual users of Anne Arundel's EMS. (*Id.* ¶¶ 24–25). The contract was for a five-year term renewable at the sole discretion of the County for up to two one-year periods. (*Id.* ¶ 26).

The services contract imposed a number of obligations on Xerox. Xerox would "furnish necessary materials, equipment, tools, skill, engineering, technical support, and labor necessary to fully complete in a workmanlike and timely many the requirements of this [Request for Proposal]." (*Id.* ¶ 28). The contract also provided Xerox would develop and maintain a "comprehensive" automated billing system that would manage, for example, insurance claims processing, bad debt collections, "File Interchanges" with local hospitals, and insurance eligibility processing. (*Id.* ¶ 29–30). Xerox was also required to provide monthly status reports as well as periodic project schedule updates. (*Id.* ¶ 31). In exchange for its services, Xerox collected a fee of 6.68% of the total amount it collected on behalf of the County for EMS. (*Id.* ¶ 32).

In July of 2013, approximately four years into the contract term, Anne Arundel hired an outside consulting firm to perform an audit of Xerox's billing and collections procedures and its regulatory compliance practices. (*Id.* ¶ 34). Anne Arundel alleges that the audit uncovered a

2

host of performance deficiencies including but not limited to improper coding and processing of claims, failure to perform adequate claim follow-up procedures, and, in some instances, failure to bill certain claims altogether. (*Id.* ¶¶ 36–38). According to Anne Arundel, Xerox employees were inadequately trained in proper billing procedures and did not receive any formal compliance instruction. (*Id.* ¶ 41). The County contends the audit also revealed Xerox's ignorance of important regulatory changes and changes in Medicare billing and coding policies, and the billing software itself was improperly programmed. (*Id.* ¶ 41–43). As a result of Xerox's alleged failure to perform according to the material terms of the contract, the County claims it has lost millions in lost profits and revenues and been exposed to potential liabilities to individual claimants and insurance providers. (*Id.* ¶ 63).

In December of 2015, Anne Arundel filed a complaint filed a complaint in the Circuit Court for Anne Arundel County, and Xerox filed a notice of removal on February 26, 2016. (ECF No. 1 ¶ 1). Anne Arundel filed a complaint in this court on February 26, 2016, and an amended complaint on April 21, 2016. The complaint asserts five claims against Xerox: breach of contract (Count I), fraud: intentional misrepresentation (Count II), negligent misrepresentation (Count III), fraud: non-disclosure or concealment (Count IV), and conversion (Count V). Defendant Xerox filed a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, seeking dismissal of all five counts. (ECF No. 16-1).

## STANDARD

Defendant moves to dismiss Anne Arundel's claims under Rule 12(b)(6). In reviewing a motion to dismiss under Rule 12(b)(6), the court "must accept as true all of the factual allegations contained in the complaint," and "draw all reasonable inferences in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir.

3

2011).  The complaint must allege facts sufficient "to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 566 U.S. 662, 697 (2009).  The court is not required to accept the legal conclusions derived from the facts, and "[a] complaint that provides no more than labels and conclusions or a formulaic recitation of the elements of a cause of action" is insufficient to meet the pleading standard.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations omitted).  Generally, a motion to dismiss for failure to state a claim "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."  *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999); *see also Tobey v. James*, 706 F.3d 379, 387 (4th Cir.2013).

## ANALYSIS

Defendant moves to dismiss all five counts in Anne Arundel's complaint.  My analysis is organized by type of claim in order to most efficiently address the merits of the motion to dismiss.  Because, however, Xerox argues the majority of Anne Arundel's claims are time-barred, the statute of limitations issue is addressed first.

### I.  Statute of Limitations

Xerox contends Anne Arundel's breach of contract (Count I), intentional misrepresentation (Count II), negligent misrepresentation (Count III), and nondisclosure and concealment (Count IV) claims are time-barred under Maryland's three-year statute of limitations for civil actions.  (ECF No. 16-1, p. 5).  The legal standard for the statute of limitations is addressed generally, and its application to the breach of contract and tort claims follows.

      a.  *Legal standard*

Xerox's central premise with respect to the timeliness of the county's claims is, given the alleged scope of Xerox's performance deficiencies, Anne Arundel should have been aware of the alleged breaches and injuries almost immediately upon the commencement of performance on the contact in 2009. (*Id.* at p. 12). In order for Anne Arundel's claims to be timely filed within the applicable statute of limitations, they must have accrued sometime after December 3, 2012 - three years before the county's complaint was filed in state court. *See* MD. CODE ANN., CTS. & JUD. PROC. § 5-101 (West 2016).

Generally, the statute of limitations is an affirmative defense that is not an appropriate ground for dismissal. *See Eniola v. Leasecomm Corp.*, 214 F.Supp.2d 520, 525 (D. Md. 2002). The court may, however, grant a motion to dismiss based on a statute of limitations defense when the untimeliness of the claim is obvious on the face of the complaint. *See Evans v. Beneficial Fin. I, Inc.*, No. 14-1994, 2015 WL 535718, at *2 (D. Md. Feb. 9, 2015) (citing *Brooks v. City of Winston–Salem, N.C.*, 85 F.3d 178, 181 (4th Cir. 1996)). The burden of demonstrating a viable statute of limitations defense is on the asserting party, and the plaintiff "is under no obligation to plead facts in a complaint to show the timeliness of her claims." *Id.* Furthermore, "[w]hether or not the plaintiff's failure to discover his cause of action was due to failure on his part to use due diligence, or to the fact that defendant so concealed the wrong that plaintiff was unable to discover it by the exercise of due diligence, is ordinarily a question of fact for the jury." *O'Hara v. Kovens*, 305 Md. 280, 294–95 (1986); *cf. Brown v. Neuberger, Quinn, Gielen, Rubin & Gibber, P.A.*, 731 F. Supp. 2d 443, 449–50 (D. Md. 2010), *aff'd*, 495 F. App'x 350 (4th Cir. 2012) ("If there is a genuine dispute of material fact as to when the plaintiff was on inquiry notice, summary judgment is inappropriate."); *Frederick Rd. Ltd.*, 360 Md. at 93–94 (stating that summary judgment was inappropriate where there was a genuine dispute of material

5

fact regarding whether plaintiffs could be charged with notice of their cause of action and exercised due diligence to protect their rights).

Under Maryland law, civil claims do not necessarily accrue at the time of the breach or injury, but instead will generally accrue when the plaintiff either knows or reasonably should have known the breach or injury occurred. *See Poffenberger v. Risser*, 290 Md. 631, 636 (1981). The so-called "discovery rule" in effect "tolls the accrual date of the action until such time as the potential plaintiff either discovers his or her injury, or should have discovered it through the exercise of due diligence." *Poole v. Coakley & Williams Const., Inc.*, 423 Md. 91, 131 (2011); *see also Lumsden v. Design Tech Builders, Inc.*, 358 Md. 435, 445 (2000) (stating that "limitations begin to run when a claimant gains knowledge sufficient to put her on inquiry. As of that date, she is charged with knowledge of facts that would have been disclosed by a reasonably diligent investigation"). The discovery rule "applies generally in all civil actions." *Hecht v. Resolution Trust Corp.*, 333 Md. 324, 334 (1994). The plaintiff will be charged with "inquiry notice" of "all facts which [] an investigation would in all probability have disclosed if it had been properly pursued" from the time that he or she gains "knowledge of circumstances which ought to have put a person of ordinary prudence on inquiry" about a potential breach or injury. *Poffenberger*, 290 Md. at 681. The statute of limitations period is triggered when the plaintiff is charged with inquiry notice. *See id.* Xerox argues Anne Arundel should be charged with inquiry notice of both its breach of contract and tort claims beginning in 2009.

b. *Breach of contract (Count I)*

Anne Arundel alleges Xerox repeatedly breached numerous provisions in the parties' services contract over the course of several years. (ECF No. 12 ¶ 61– 62). Xerox contends Anne Arundel's breach of contract claim is time-barred because the alleged breaches would have been

apparent to the County very early on in the contract term. (ECF No. 16-1, pp. 12–13).

Specifically, Xerox argues the County should have been on inquiry notice that a breach may

have occurred because "[a]t minimum, it must have known whether monthly reports were

provided on a monthly basis, whether information regarding claims . . . were provided, and the

like." (ECF No. 16-1, p. 13). The crux of Xerox's argument seems to be that because Xerox

may have failed to provide Anne Arundel with a regular flow of information about Xerox's

performance, the County should have known that something was potentially amiss. According

to Anne Arundel, however, Xerox's performance deficiencies and the existence and scope of

material breaches of the services contract did not become apparent until the County performed its

audit in July of 2013. (ECF No. 12 ¶¶ 34–38). Anne Arundel maintains its claims accrued

within the three year statute of limitations. (ECF No. 17, p. 2). Alternatively, the County argues

the contract was "under seal" and was therefore a specialty subject to a twelve-year statute of

limitations. (*Id.* p. 5).

The parties' disagreement regarding the date of inquiry notice of the alleged breaches is a

factual dispute that is improper to resolve at the motion to dismiss stage. *See, Eniola*, 214

F.Supp.2d at 525; *cf. O'Hara*, 305 Md. at 294–95. Based on the facts alleged by Anne Arundel,

it is not clear on the face of the complaint that the County's breach of contract claim is time-

barred. As the County points out, it was relatively inexperienced in the field of EMS billing and

collections, and the processes required specialized knowledge and expertise. (ECF No. 12 ¶¶

14–16). Depending in part on the extent of information sharing between the parties over the

course of the contract and the obviousness of Xerox's performance deficiencies—facts that

would need to be developed during discovery—it is plausible the County was justifiably unaware

of Xerox's breaches until the audit in 2013. Accordingly, I cannot, at this stage, hold Anne

Arundel's breach of contract claim is barred by the three-year statute of limitations for civil actions.

Anne Arundel also claims, and Xerox disputes, the contract was executed under seal and is therefore subject to a twelve-year statute of limitations. (ECF No. 17, p. 2). By statute, certain actions brought on certain enumerated "specialties" may be subject to a twelve-year rather than a three-year statute of limitations. MD. CODE ANN., CTS. & JUD. PROC. § 5-102(a) (West 2016). Specifically, a contract that has been executed "under seal" will be governed by the extended statute of limitations period. *Id.* § 5-102(a)(5).

In certain scenarios, namely when contracts are executed by individuals, the presence of the word "seal" on the signature page of the contract or the presence of a seal itself may be sufficient to render a contract "under seal" for the purposes of the special limitations period. *See, e.g.*, *Warfield v. Balt. Gas & Elec. Co.*, 307 Md. 142, 143 (1986); *Pac. Mortg. & Inv. Group. Ltd v. Horn*, 100 Md. App. 311, 321 (1994). This rule, however, is specific to contracts signed by individuals and does not extend to contracts signed by corporate entities. *See Columbia Ass'n, Inc. v. Poteet*, 199 Md. App. 537, 549–50 (2011). Maryland courts have made clear the mere presence of a corporate seal accompanying a signature on a contract is *not* automatically sufficient to transform a general contract into a contract made "under seal." *See Poteet*, 199 Md. App. At 551. Rather, the use of a corporate seal usually indicates only that the document is the act of a corporation and the officers executing the contract had the authority to do so. *See id.* (citing *Gildenhorn v. Columbia Real Estate Title Insurance Co.*, 271 Md. 387, 398 (1974)). Therefore, a contract affixed with a party's corporate seal will only be considered "under seal" if the seal is accompanied by a "recital affixing the seal" or by "extrinsic evidence showing an intention to have it serve the function of a general seal." *Gildenhorn*, 271 Md. at 398; *see also*

*Mayor & Council of Federalsburg v. Allied Contractors, Inc.*, 275 Md. 151, 155 (1975) ("if a corporate seal is impressed on an agreement it will remain a simple contract unless either the body of the contract itself indicates that the parties intended to establish an agreement under seal, or sufficient extrinsic evidence [indicates such an intention]").

Anne Arundel points to no evidence in the original contract between the County and Xerox—then ACS State & Local Solutions—indicating the parties intended for the agreement to be under seal. The testimonium clause in the Agreement for Services is noticeably devoid of any recital affixing the seal, and instead reads only: "IN WITNESS WHEREOF, the parties hereto have executed this agreement as of the day and year first above written." (ECF No. 12-1, p. 2). Though the word "(SEAL)" is printed beneath the signature lines, this recitation demonstrates only that the parties were contracting as authorized corporate agents and it is not sufficient to render the contract "under seal." *See Allied Contractors*, 275 Md. at 155. Furthermore, the fact that the parties' later amendments to the original agreement contain testimonium clauses that *explicitly* make reference to the seals demonstrates the parties were aware that adding a recitation clause was necessary to create a contract under seal. (ECF No. 12-2, p. 2; 17-1, p. 2).[1] Lastly, although Anne Arundel contends courts may consider extrinsic evidence that the parties intended create a contract under seal, it offers no evidence outside of the Agreement for Services and the two bare-bones Amendments that indicate the parties so intended. (ECF No. 17, pp. 4–5).[2] The

---

[1] The testimonium clauses of both Amendments read: "IN WITNESS WHEREOF the parties have set their hands *and seals* on the date first above-written." (emphasis added).

[2] The county claims that the later Amendments to the agreement, which arguably *were* made under seal, somehow transform the original agreement into one made under seal, apparently by demonstrating the parties intended the original agreement to be under seal as well. (ECF No. 17, pp. 3–4). The idea that a later amendment can alter or shed light on an original agreement in such a way is unsubstantiated. Rather, Fourth Circuit precedent clearly indicates that amendments and original contract documents are to be treated separately for the purposes of analyzing the appropriate statute of limitations, which will depend on the document the plaintiff

contract, therefore, is not subject to the twelve-year statute of limitations for specialties, and the standard three-year statute of limitations for civil actions will apply.

c. *Intentional misrepresentation (Count II), Negligent misrepresentation (Count III), and nondisclosure or concealment (Count IV)*

Anne Arundel alleges Xerox made several false representations of material fact to the County both before and during the contract negotiations regarding Xerox's level of expertise in EMS billing and collections and the resources Xerox was willing to devote to Anne Arundel's project. (ECF No. 12 ¶¶ 65–68). Additionally, the County contends Xerox withheld material information about Xerox's "abilities and expertise with respect to data collection, documentation, coding, and billing for EMS services." (*Id.* ¶ 84). These misrepresentations and nondisclosures, Anne Arundel claims, were instrumental to the County's decision to award Xerox the services contract. (*Id.* ¶¶ 71, 78, 87).

With respect to the County's misrepresentation and nondisclosure claims, Xerox first contends that any alleged misrepresentations and nondisclosures must have occurred prior to or during the contract negotiations between the parties in early 2009. (ECF No. 16-1, p. 14). Again, Xerox argues, given these alleged torts occurred at the onset of the parties' relationship, the County should have discovered the misstatements and nondisclosures long before the 2013 audit. (*Id.*). Xerox essentially claims that because the alleged scope of Xerox's failure to perform under the contract was so extensive, the fact that the representations made to the County prior to the commencement of the contract were inaccurate and misleading should have been apparent almost immediately. (*Id.*) The County counters it was not able to discover Xerox's

---

is actually suing on. *See, e.g., Frank v. Baselaar*, 189 Md. 371, 375–76 (1947) (holding the plaintiff's claim arising under an unsealed amendment to a lease was subject to the three-year statute of limitations, regardless of whether the original lease was sealed or unsealed); *Pantry Pride Enters., Inc. v. Glenlo Corp.*, 729 F.2d 963 (4th Cir. 1984) (holding the plaintiff's suit on an unsealed amendment was subject to the three-year statute of limitations).

misrepresentations and nondisclosures until the 2013 audit revealed the statements Xerox made prior to and during the contract negotiations were materially false. (ECF No. 13, p. 10).

As was the case with Anne Arundel's breach of contract claim, there is factual dispute with respect to when the county can be charged with inquiry notice of Xerox's alleged torts. Based on the facts alleged by Anne Arundel, it is not clear on the face of the complaint that the County's tort claims are time-barred. Again, whether the County was on inquiry notice of the alleged misrepresentations and nondisclosures is a highly fact-dependent inquiry. *See O'Hara*, 305 Md. At 294–95. Xerox has not alleged facts sufficient to demonstrate conclusively that Anne Arundel was aware or should have been aware of potential claims prior to the audit in 2013.[3] Accordingly, I cannot, at this stage, hold that Anne Arundel's misrepresentation and nondisclosure claims are barred by the three-year statute of limitations for civil actions.

## II.   Substantive Claims

Anne Arundel alleges that Xerox is liable for breach of contract, intentional misrepresentation or, alternatively, negligent misrepresentation, nondisclosure or concealment, and conversion. Xerox asserts a number of general as well as claim-specific defenses that are addressed within the subsections discussing each claim where applicable.

### a.   *Breach of contract*

Xerox does not challenge the sufficiency of Anne Arundel's breach of contract claim on the merits.

### b.   *Fraudulent Misrepresentation*

---

[3] Xerox also argues Anne Arundel cannot invoke fraudulent concealment tolling for its breach of contract or tort claims. (ECF No. 16-1, p. 15). The County, however, does not appear to assert eligibility for tolling under a fraudulent concealment theory, and instead is relying on the standard discovery rule applicable to all civil actions. (ECF No. 13, p. 9). Regardless, it is not necessary at this stage to resolve the fraudulent tolling issue, as I have concluded Anne Arundel's claims are not clearly barred by the three-year statute of limitations.

Xerox argues Anne Arundel has failed to state a claim for fraudulent misrepresentation, primarily because the County does not allege fraud with the requisite level of particularity and because Xerox's statements were promissory in nature. (ECF No. 16-1, p. 25). Relatedly, Xerox claims the alleged misrepresentations amount to "mere puffery" and statements of opinion rather than actionable material statements. (*Id.* p. 24).[4]

In order to state a claim for fraudulent misrepresentation under Maryland law, Anne Arundel must demonstrate "(1) that the defendant made a false representation to the plaintiff, (2) that its falsity was either known to the defendant or that the representation was made with reckless indifference as to its truth, (3) that the misrepresentation was made for the purpose of defrauding the plaintiff, (4) that the plaintiff relied on the misrepresentation and had the right to rely on it, and (5) that the plaintiff suffered compensable injury resulting from the misrepresentation." *Martens Chevrolet, Inc. v. Seney*, 439 A.2d 534, 537 (Md. 1982). The County claims Xerox knowingly or recklessly made false representations to it regarding their level of expertise in billing and collections services and the resources they were willing to devote to the County's project, and that Xerox did so with the intention of inducing the County to award

---

[4] Xerox contends at the outset of their objections to the tort allegations that the County's intentional misrepresentation claim, negligent misrepresentation claim, and nondisclosure or concealment claim are actually just breach of contract claims masquerading as torts. (ECF No. 16-1, p. 17). This argument is misplaced. According to the pleadings, the County is alleging that Xerox made misrepresentations—both by affirmative statements and by nondisclosure or concealment—independent from the written agreement between the parties and prior to the finalization of the contract. (ECF No. 12 ¶¶ 70, 78, 86). Anne Arundel claims Xerox's misrepresentations induced the County to agree to contract with Xerox in the first place. (ECF No. 12 ¶ 70). Accordingly, Anne Arundel's claims are properly plead as torts. *See e.g., Summit DNA, L.L.C. v. Proove Biosciences, Inc.*, No. 14-1329, 2015 WL 3901973, at *8 (D. Md. June 23, 2015). Xerox also argues that the County fails to demonstrate that Xerox had a tort duty independent of its obligation under the contract. (ECF No. 16-1, p. 18). Duty is relevant to the negligent misrepresentation and nondisclosure and concealments claims, *see Cooper v. Berkshire Life Ins. Co.,* 148 Md. App. 41, 57–58 (2002); *Brown*, 731 F. Supp. 2d at 452–53, and duty is addressed in the subsections discussing those claims below.

them the services contract. (ECF No. 12 ¶¶ 69–70). Furthermore, the County alleges it

justifiably relied on Xerox's representations and, as a direct result of Xerox's representations, it

has incurred substantial damages. (*Id.* ¶¶ 71–72).

1. "Mere puffery" and promissory statements

Xerox correctly asserts that Maryland courts distinguish between vague statements of

opinion or "puffery" and material statements of fact. *See, e.g., McGraw v. Loyola Ford, Inc.*,

124 Md. App. 560, 582 (1999); *Travel Comm., Inc. v. Pan Am. World Airways, Inc.*, 91 Md.

App. 123, 178 (1992). Material statements of fact are actionable while generalized expressions

of opinion or "sales talk" are insufficient to sustain a claim for fraudulent misrepresentation. *See*

*McGraw*, 124 Md. App. at 582. Xerox claims the misrepresentations alleged by Anne Arundel,

such as Xerox was "committed to delivering the highest level of customer service," are exactly

the kind of "puffery" the courts refuse to recognize as actionably fraudulent. (ECF No. 16-1, p.

24–25). Anne Arundel's allegations, however, are not limited to the generalized statements

identified in Xerox's motion. Rather, Anne Arundel points to more concrete representations

Xerox made in its proposal and during negotiations about its rate of collection, its level of

expertise and regulatory compliance, and the resources and training it planned to devote to the

County's billing and collections contract. (ECF No. 12 ¶¶ 18–20). Moreover, these

representations were undoubtedly consequential to the County. Anne Arundel was new to the

business of billing and collections for EMS transports, and it solicited proposals from contractors

precisely because it sought to hire a company with expertise. (*Id.* at ¶¶ 15–16).

Additionally, Xerox argues it cannot be held liable for statements that represent what will

happen in the future or are merely promissory in nature. (ECF No. 16-1, p. 25). Maryland

courts, however, have made clear that a defendant's statement of intention regarding future

13

conduct, if false at the time it was made, can support a claim for fraud. *See Summit DNA, L.L.C. v. Proove Biosciences, Inc.*, No. 14-1329, 2015 WL 3901973, at *8 (D. Md. June 23, 2015) ("Maryland courts have rejected the Defendant's argument that no promise of future conduct is actionable in fraud. If the promise is made with the current intention not to perform, then a plaintiff may have a claim for fraudulent misrepresentation."); *see also Alleco Inc. v. Harry & Jeanette Weinberg Found., Inc.*, 340 Md. 176, 197 (1995) (stating a "defendant's deliberate misrepresentation of his existing intentions, where the misrepresentation was material to the transaction giving rise to the alleged fraud, may form the basis for an action in fraud or deceit"); *Gross v. Sussex,* 332 Md. 247, 258 (1993) ("making a promise as to a matter material to the bargain with no intention to fulfill it is an actionable fraud"). Maryland courts have also sanctioned actions for fraudulent or negligent misrepresentation when statements are made during contract negotiations that induce the plaintiff to enter into the agreement. *See Summit DNA, L.L.C.*, No. 14-1329, 2015 WL 3901973, at *8 (citing *Weisman v. Connors,* 312 Md. 428, (Md.1988)). Anne Arundel maintains Xerox made a number of promises and representations, both in its written proposal for the services contract and during negotiations, and the County relied on these representations when awarding Xerox the bid. (ECF No. 12 ¶¶ 23–24). Again, for example, Anne Arundel claims that Xerox promised to commit substantial resources to the services contract, provide employee training, maintain regulatory compliance, and "provide a quality technology solution." (*Id.* ¶¶ 66–68). If, as the County appears to be claiming, Xerox had no intention of fulfilling these promises at the time they were made in 2009, it may be held liable for fraud. *See, e.g., Gross,* 332 Md. at 258. Furthermore, to the extent the County alleges Xerox misrepresented its level of expertise, Xerox made material misrepresentations of current fact. Accordingly, these statements can support an action for material misrepresentation.

2.  Failure to plead with particularity

Xerox contends Anne Arundel fails to plead its intentional misrepresentation claim with the particularity required by Federal Rule of Procedure 9(b).  Specifically, Xerox claims that the County has "failed to identify specific statements, representations, or nondisclosures," and instead identifies only "very general statements" made by Xerox regarding its qualifications and commitment.  (ECF No. 16-1, p. 19).  Xerox maintains Anne Arundel also neglected to identify the specific source or location of the representations.

Xerox is correct that allegations of fraud require the plaintiff to plead facts with a heightened degree of particularity.  Rule 9(b) states that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  Fed. R. Civ. P. 9(b).  As the Fourth Circuit has explained, the plaintiff "must, at minimum, describe the time, place and contents of the false representations, as well as the identity of the person making the representation and what he obtained thereby."  *United States ex rel. Owens v. First Kuwaiti Gen'l Trading & Contracting Co.*, 612 F.3d 724, 731 (4th Cir. 2010).  Essentially, the plaintiff is asked to provide the court with the "who, what, when, where, and how: the first paragraph of any newspaper story."  *Willis v. Bank of Am., N.A.*, No. 13-2615, 2015 WL 5157501, at *10 (D. Md. Sept. 2, 2015) (internal citations omitted).

Though Rule 9(b) requires the plaintiff to plead their fraud claim with a higher degree of particularity, "a court should hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which she will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts."  *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 786 (4th

Cir.1999). Furthermore, while Rule 9(b) demands the plaintiff be specific in its allegations, this court has not required that the plaintiff's pleading be the absolute "picture of clarity" as long as the basic requirements of the rule are met. *See Cunney v. Patrick Commc'ns LLC*, No. 13-2519, 2015 WL 6783010, at *8 (D. Md. Nov. 6, 2015).

Anne Arundel alleges a number of specific misrepresentations in its amended complaint. For example, the County claims Xerox represented in its contract proposal that it had the requisite expertise to provide the specialized services that the County required and it was prepared to do so in accordance with regulatory standards. (ECF No. 12 ¶ 18). Additionally, Anne Arundel alleges that Xerox boasted a 95% third-party collection rate for its clients. (*Id.* ¶ 20). Both of these misrepresentations, among others, were alleged to have been made on or around February 18, 2009—the date Xerox submitted its proposal to the county. (*Id.* ¶¶ 18, 20). Though the complaint does not name a specific person or representative at Xerox, Anne Arundel cites to the written contract proposal directly as the source of the major misrepresentations. (*Id.* ¶¶ 18–20). The facts alleged by Anne Arundel, while not the "picture of clarity," provide the court and the defendant with the essential source, content, and time period of the alleged misrepresentations with an adequate degree of particularity to survive a motion to dismiss at this stage of the litigation. I cannot say as a matter of law Anne Arundel has failed to meet the heightened pleading requirements of Rule 9(b) with respect to its intentional misrepresentation claim.

    c. *Negligent misrepresentation*

Anne Arundel argues that, even if Xerox cannot be held liable to the County for intentional misrepresentations, it should be held liable for negligent misrepresentation. A claim for negligent misrepresentation requires that "(1) the defendant, owing a duty of care to the

plaintiff, negligently asserts a false statement; (2) the defendant intends that his statement will be

acted upon by the plaintiff; (3) the defendant has the knowledge that the plaintiff will probably

rely on the statement, which, if erroneous, will cause loss or injury; (4) the plaintiff, justifiably,

takes action in reliance on the statement; and (5) the plaintiff suffers damage proximately caused

by the defendant's negligence." *Martens Chevrolet*, 292 Md. at 337. Xerox attacks the

sufficiency of the County's negligent representation claim on the basis that the County has failed

to demonstrate Xerox owed it a duty of care independent of the obligations imposed by the

contract between the parties. (ECF. No. 16-1, p. 23).[5] Xerox also contends, as it did with

respect to the County's claim for intentional misrepresentation, the misstatements the County

identified in its complaint amount to "mere puffery" or vague generalizations. (*Id.* p. 24).[6] Anne

Arundel maintains Xerox owed the County a duty of care during the proposal and negotiations

period as well as during the course of the services contract. (ECF No. 12 ¶ 74).

Xerox argues Anne Arundel has failed to plead the existence of a duty of care

independent from the contract between the parties that would give rise to liability for negligent

misrepresentation. (ECF No. 16-1, p. 23). Anne Arundel alleges in its complaint that Xerox did

in fact owe the County a duty of care leading up to the finalization of the services contract and

that a duty of care also existed during the performance period of the agreement. (ECF No. 12 ¶

74). Though the County does not specify exactly the source of the independent duty in laying

out its claim for negligent misrepresentation, it repeatedly references its allegation that Xerox

---

[5] Xerox also argues the economic loss doctrine bars the County's negligent misrepresentation claim. (ECF No. 16-1, p. 22). Anne Arundel and Xerox were indisputably parties to a contract. Accordingly, whether the County's claim is barred by the economic loss doctrine is dictated by whether Xerox owed the County an independent duty of care.

[6] It is not necessary to readdress the issue of whether Xerox's misstatements amounted to "mere puffery" or statements of material fact. As discussed above in section II(b)(1), I conclude that representations identified by Anne Arundel are more than "puffery" or "sales talk" and may qualify as material misstatements of fact.

represented itself as an expert in the field of billing and collections for EMS. (ECF No. 12 ¶¶ 18, 66, 75). Presumably, the duty alleged by the County is linked at least in part to Xerox's representation of special skill and expertise.

Xerox is correct that, unlike fraudulent misrepresentation, negligent misrepresentation requires the existence of a duty owed to the plaintiff by a defendant. *See Cooper v. Berkshire Life Ins. Co.,* 148 Md.App. 41, 57–58 (2002). The fact that Xerox and Anne Arundel were relatively sophisticated parties who ultimately entered into a contract negotiated at arms-length does not, however, automatically preclude the existence of an independent tort duty. *See Martens Chevrolet,* 292 Md. at n. 7. Whether or not a duty of care exists is a highly context dependent inquiry, and no one factor is dispositive. Courts have explained "[t]he precise degree of the relationship that must exist before recovery will be allowed is a question that defies generalization," but "the most common example of the duty to speak with reasonable care is based on a business or professional relationship, or one in which there is a pecuniary interest." *Giant Food, Inc. v. Ice King, Inc.,* 74 Md.App. 183, 189–90, *cert. denied,* 313 Md. 7 (1988). Distinguishing between cases involving personal injury and those involving only economic loss, Maryland courts have held imposing a duty in cases involving solely economic loss requires an "intimate nexus" between the parties. *Weisman,* 312 Md. at 446 . "This intimate nexus is satisfied by contractual privity or its equivalent." *Id.* In assessing whether a duty of care exists, courts consider the harm that will result from a failure to exercise due care and the kind of relationship that exists between the parties. *See id.* The nature of the business the parties engage in is highly relevant to the determination. *See Jacques v. First Nat. Bank of Maryland,* 307 Md. 527, 541 (1986). When a party engages in an activity involving the public interest, for example, courts are more willing to impose a duty of care and expose defendants to tort liability. *See, e.g.,*

18

*id.* (stating that whether a defendant's business involves a "public calling" or has a "close relationship with the public interest" is relevant to the existence of a duty).

Anne Arundel alleges, given its inexperience in billing and collections for EMS transports, it needed a provider that had both expertise and familiarity with the industry to render these services. (ECF No. 12 ¶¶ 15–16). Relying on Xerox's representations about its level of skill and commitment, the County entrusted the company to help them navigate the field for the first time. (ECF No 12 ¶¶ 78–80). Furthermore, the activity Xerox was contracted to perform— billing and collections for EMS transports—is arguably critical to the successful administration of a valuable public medical service. Lastly, the extent of the potential harm that can result from the failure to exercise due care on the part of Xerox is by no means minimal. Xerox's allegedly inaccurate billing and inadequate expertise and training exposes Anne Arundel to both economic and legal harm. The fact that Xerox and Anne Arundel participated in arms-length negotiations related to a commercial transaction does not foreclose the possibility Xerox owed the County a duty of care before the contract was signed due to an "intimate nexus" or special relationship between the parties and an duty of care during the contract term that is independent of the obligations imposed by the agreement. I cannot say, as a matter of law, Xerox did not owe an independent duty of care to Anne Arundel and as such is immune from liability for negligent misrepresentation.

### d. *Nondisclosure or Concealment*

Anne Arundel claims, in addition to making a number of affirmative misrepresentations to the County regarding its resources and expertise, Xerox also intentionally concealed and continues to conceal material facts. A claim for nondisclosure or concealment requires that "(1) Defendant owed a duty to plaintiff to disclose a material fact; (2) Defendant failed to disclose

that fact; (3) Defendant intended to defraud or deceive plaintiff; (4) Justifiably relying on the concealment, plaintiff takes action; and (5) Plaintiff suffers damages from defendant's concealment." *Lubore v. RPM Associates, Inc.*, 109 Md. App. 312, 328 (1996). Xerox contends Anne Arundel fails to demonstrate that Xerox owed the County the requisite duty to disclose. (ECF No. 16-1, p. 21). Additionally, Xerox argues Anne Arundel's nondisclosure or concealment allegations do not satisfy the requirements of Rule 9(b). (*Id.* p. 19). Because I conclude that Anne Arundel's claim for nondisclosure or concealment fails to meet the heightened pleading standard for fraud claims under Rule 9(b), I do not address whether Xerox owed the County a duty to disclose.

As discussed *supra*, Rule 9(b) states "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Again, the plaintiff "must, at minimum, describe the time, place and contents of the false representations, as well as the identity of the person making the representation and what he obtained thereby." *First Kuwaiti*, 612 F.3d at 731. In the context of fraud by nondisclosure or concealment, the stringent requirements of Rule 9(b) are somewhat more relaxed in order to accommodate the difficulties associated with pleading omissions as opposed to affirmative statements. *See Shaw v. Brown & Williamson Tobacco Corp.*, 973 F.Supp. 539, 552 (D. Md. 1997) (internal quotations omitted) ("Rule 9(b) is less strictly applied with respect to claims of fraud by concealment or omission of material facts, as opposed to affirmative misrepresentations, because an omission cannot be described in terms of the time, place, and contents of the misrepresentation or the identity of the person making the misrepresentation."). Though the pleading standard is more lenient in the concealment context, the plaintiff must still plead with a

baseline level of particularity. A complaint that contains merely conclusory allegations of fraud is insufficient to sustain a claim for nondisclosure or concealment.

In its amended complaint, Anne Arundel alleges Xerox failed to disclose to the County "material facts" Xerox had a duty to disclose. (ECF No. 12 ¶ 83). Alleging no specific examples, Anne Arundel simply states Xerox "intentionally concealed or failed to disclose . . . certain material facts including information about Xerox's abilities and expertise" with respect to the services it was contracted to provide. (*Id.* ¶ 84). The complaint, therefore, contains only the bare assertion that the facts concealed were material and a generalized description of the information allegedly withheld.[7] In sum, the County's does not describe with any degree of specificity the time, place, or content of the nondisclosures. Even taking into account that Rule 9(b)'s heightened pleading standard is applied more leniently in the context of fraud by omission, Anne Arundel's nondisclosure or concealment claim is not plead with sufficient particularity.

  e. *Conversion*

Lastly, Anne Arundel alleges Xerox is liable for conversion due to its failure to provide the County with all the records of the services Xerox provided over the contract term. The services contract between the parties required Xerox to retain all documents and records related to the billing and collections services performed on behalf of the County. (ECF No. 12 ¶ 91). The contract also provided all data and reports prepared in connection with the services Xerox

---

[7] Anne Arundel's nondisclosure or concealment claim appears to be an inverse of their claim for intentional misrepresentation. Essentially, Anne Arundel seems to be saying: "Xerox lied to us about being experts in billing and collections for EMS," and, perhaps in the alternative, "Xerox did not disclose to us that they *weren't* experts in the field in billing and collections for EMS." If that is the case, however, it is still not clear on the face of the complaint what, exactly, Xerox is supposed to have concealed from the County. Accordingly, the County's issues with Xerox's alleged misrepresentations are adequately represented by its intentional misrepresentation claim, which complies with the applicable pleading standard.

rendered "shall become the property of the county," and all relevant documentation would be turned over to Anne Arundel upon request for inspection. (*Id.* ¶ 90). Xerox, the County claims, has refused to furnish the records despite multiple requests to provide them. (*Id.* ¶ 92).

Maryland courts have made clear "mere failure to perform under a contract is not enough" to maintain an action for conversion and "a positive, tortious act" distinct from the breach of the contract term is indispensable. *Fink v. Pohlman*, 85 Md. App. 106, 114 (1990); *see also K & K Management v. Lee*, 316 Md. 137, 171 (holding an action for conversion can arise out of contract when a tortious act *beyond* breach of the original contract was committed); *Western Maryland Dairy, Inc. v. Maryland Wrecking and Equipment Co.*, 146 Md. 318, 328 (1924) ("[I]f there be no unlawful taking or exercise of dominion over a chattel, a conversion cannot be based upon the mere failure of the defendant to perform with regard to the chattel some affirmative act which he has by contract assumed."). Furthermore, even if some deprivation of property rightfully belonging to the plaintiff is alleged, if the deprivation is a direct result of a breach of a contract provision entitling the plaintiff to the property at issue, the deprivation cannot, without an independent act, sustain a cause of action for conversion. *See Tribalco, LLC v. Hue Tech., Inc.*, No. 11-93, 2011 WL 3821074, at *6 (D. Md. Aug. 26, 2011) (holding the defendant's retention of materials it purchased on behalf of the plaintiff was a breach of the contract between the parties that could not be realleged as conversion despite the fact that the plaintiff had successfully demonstrated a right to the property at issue); *see also Summit DNA, L.L.C.*, No. 14-1329, 2015 WL 3901973, at *9 (dismissing plaintiff's conversion claims when both alleged property deprivations arose "directly from breaches of contract provisions" and not an independent tortious act).

Though Anne Arundel arguably has an unqualified right to access and inspect the records and data of the services performed by Xerox under the contract, the source of its unqualified right is the contract itself.  In other words, Xerox's failure to furnish the records at the County's request is simply a breach of a contract term.  As Xerox rightly points out, Anne Arundel has not identified in its complaint any additional or distinct tortious act on the part of Xerox outside of Xerox's failure to adhere to the contract.  (ECF No. 16-1, pp. 28–29).  Without an independent tortious act, Anne Arundel's allegation that Xerox breached its contractual obligation to furnish service records is insufficient to support a cause of action for conversion.

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss is granted in part and denied in part.  Anne Arundel's nondisclosure and concealment claim (Count IV) and its conversion claim (Count V) are dismissed.  A separate order follows.

_September 30, 2016_
Date

_/s/_
J. Frederick Motz
United States District Judge